**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO-DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Raymond C. Johnson and | ) | |
| Joiann Johnson | ) | Case No. 05-10983 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| Charles M. Ivey, III Trustee | ) | |
| For Raymond C. Johnson | ) | |
| and Joiann Johnson, | ) | Ad. Proc. No. 05-2103 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Marilyn Graham and, | ) | |
| Walter Graham | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION DENYING MOTION TO SET ASIDE ENTRY OF DEFAULT AND DEFAULT JUDGMENT

THIS MATTER came on before the Court on December 8, 2005 upon the motion by Marilyn and Walter Graham to set aside the entry of default. Appearing before the Court was Gerald S. Schafer, attorney for the Defendants, and J. Marshall Shelton, attorney for Charles M. Ivey, III, who is the duly-appointed chapter 7 trustee in this case (the "Trustee"). For the reasons stated herein, the Court will deny the Defendants' motion to set aside the entry of default.

### JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District

Court for the Middle District of North Carolina on August 15, 1984.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(F) and (H), which this court may hear and determine.

## FACTS

On or about August 17, 2005, the Trustee filed and served a Complaint to Recover Property Under Sections 11 U.S.C. §§ 547 and 548 of the Bankruptcy Code (the "Complaint") as a result of the Debtors transferring $35,000.00 to the Defendants, MaryLyn and Walter Graham. The Complaint sets forth three causes of action.  The first cause of action seeks to avoid the transfer pursuant to Section 548(a)(1)(B).  The second cause of action seeks to avoid the transfer pursuant to Section 548(a)(1)(A).  The third cause of action seeks to avoid the transfer as a preference pursuant to Section 547.

The Defendants never responded to the Complaint, and on or about November 4, 2005, an Entry of Default for failure to respond was entered.  Default Judgment was entered against the Defendants on November 7, 2005.  On or about November 10, 2005, the Defendants filed a Motion to set aside Entry of Default and Default Judgment (the "Motion").  A hearing on the Motion was held on December 8, 2005.

## DISCUSSION

The Defendants seek to set aside the entry of default pursuant to Rule 55(c) of the Federal Rules of Civil Procedure.  Rule 7055 of the Federal Rules of Bankruptcy Procedure incorporates Rule 55 of the Federal Rules of Civil Procedure dealing with default judgments.  Under subparagraph (c) of Rule 55, the court may set aside an entry of default for "good cause shown"; if a judgment by default has been entered, then the court may set aside the default judgment "in

accordance with Rule 60(b)."  In the present case, both an entry of default and a default judgment have been entered, so Rule 60(b) is controlling.

In order to obtain relief from a judgment under Rule 60(b), a movant must show that (1) the motion is timely, (2) the movant has a meritorious defense to the action, (3) the opposing party would not be unfairly prejudiced by having the judgment set aside, and (4) the movant can establish one or more of the grounds for relief set forth in Rule 60(b), such as mistake, inadvertence, surprise, or excusable neglect.  See Werner v. Carbo, 731 F.2d 204, 206-07 (4th Cir. 1984); Compton v. Alton Steamship Co., Inc., 608 F.2d 96, 102 (4th Cir. 1979).

Rule 60(b) controls in cases wherein an entry of default and a default judgment have been entered.  In re USN Communications, Inc., 288 B.R. 39, 394 (Bankr. Del. 2003) "A court when deciding a motion to vacate default judgment must consider the following factors: 1) whether the plaintiff will be prejudiced if the judgment is vacated; 2) whether the defendant has a meritorious defense to the underlying action; and 3) whether the default was a result of the defendant's culpable conduct." Id. at 394-395.

A.  The Default Was the Result of the Defendants' Culpable Conduct

The Trustee asserts that the question of whether the default was a result of the Defendants' culpable conduct is similar to an inquiry into whether the Defendants can demonstrate excusable neglect as that concept was developed by the Supreme Court in Pioneer Investment Services v. Brunswick and Associates Limited Partnership et al., 507 U.S. 380 (1993); see In re USN Communications, 288 B.R. 395.  The Trustee contends that the Defendants' conduct was directly responsible for the default, either because they received the Complaint and failed to respond or because they failed to receive the Complaint due to their own conduct.  On August 17, 2005, the

Trustee filed an adversary proceeding against the Defendants.  The certificate of service for the summons and Complaint indicate that the Complaint was sent by first class mail to the Defendants at their proper address, which is 210 Chelsea Acres Court, Jamestown, North Carolina (the "Home Address").  The Trustee asserted, without contradiction, that neither the Complaint nor any other mail sent to the Defendants at their Home Address was returned to the Trustee's office.  The Defendants claim that their failure to respond to the Complaint was due to the fact that they never received the Complaint in the mail.  The Trustee asserts that under the mailbox rule when an item is deposited in first class mail, properly addressed, and is not returned to the sender, then it is deemed to have been served properly upon the defendant.  Fed. R. Bankr. P. 7005 (incorporating Fed. R. Civ. P. (5)(b)(2)(B)); see Hagner v. United States, 285 U.S. 427, 430 (1932); see also In re Eagle Bus Mfg. Inc., 62 F.3d 730, 735 (5th Cir. 1995).  The burden of proof is then upon the addressee to show that he did not receive the document served or to explain why he failed to respond.

At the hearing, the Defendants testified that during the eleven years that they have lived at their current address they have had continuous problems with the delivery of their mail.  In support of their testimony, the Defendants' neighbors also testified about numerous problems encountered with the delivery of mail in their neighborhood.  The Defendants and their neighbors testified that they had made numerous complaints to the post office regarding their inability to receive mail that they knew had been sent to them.

The Defendants testified that they run a business out of their home and further testified that the failure to receive important, time-sensitive mail has caused them to be assessed fines, penalties, and late charges.  The Defendants further testified that the failure to receive mail has

4

caused them problems with customers who claimed to have sent them payments that they never received.  The Defendants additionally testified that, while they had numerous problems with their mail and their complaints to the post office were not resolved, they felt that it was not necessary to acquire a post office box or take other steps to ensure their receipt of mail.

The Trustee argues that the Defendants were aware of their mail delivery problems and took no action to remedy the problem.  The Trustee asserts that the Defendants were in a state of willful ignorance as to the activities that were taking place around them and took no reasonable action to resolve their mail delivery problem in order to receive mail.  The Trustee asserts that the Defendants are now trying to use recurring problems with their mail delivery as an excuse for failing to properly react to the Complaint, which was mailed to their Home Address.  The Trustee argues that, if in fact the Defendants did not receive the Complaint, then it was due to the Defendant's willful ignorance in failing to take steps to ensure that they received their mail in a timely fashion.

The Court finds that the Defendants' failure to resolve their well-known mail delivery problem demonstrates culpable conduct on their part and that this factor weighs against setting aside the Entry of Default and the Default Judgment.

B.  The Defendants Have Failed to Demonstrate a Meritorious Defense

The Trustee asserts that the Defendants have not presented a meritorious defense against the preference and fraudulent conveyance actions, either in their proposed answer or through their evidence and arguments presented at the hearing.  "A meritorious defense is a critical issue because without a meritorious defense the defendant can not win at trial and there would be no point in setting aside the default judgment if the Defendant cannot demonstrate the possibility of

5

his winning." In re USN Communications, 288 B.R. at 395.  A defendant must allege specific

facts that, if established at trial, would constitute a complete defense in order to show that a

meritorious defense exists. Id.

The Trustee asserts that the Defendants have failed to show a viable defense to the

preference claim stated in the Complaint.  With regard to the preference claim, the Defendants

admit the following: (1) receiving $35,000.00 from the Debtors; (2) the $35,000.00 was on

account of an antecedent debt owed by the Debtors to the Defendants; (3) the Defendants are

insiders because they are relatives of the Debtors: and (4) the $35,000.00 payment was received

within one year prior to the Debtors' bankruptcy.  The only element of the preference action that

the Defendants deny is insolvency; they claim that the Debtors were not actually insolvent as the

date of the transfer or were not made insolvent by the transfer and that the Defendants did not

receive more than they would have received in a chapter 7 bankruptcy.  Insolvency is a defined

term under Section 101(32), which provides that insolvency exists when the sum of all of the

debtor's debts is greater than the fair market value of the debtor's assets minus the value of any

property fraudulently conveyed by the debtor and minus the fair market value of any property that

may be exempted from the property of the estate.

The Debtors' schedules list $13,875.00 in personal property assets, plus another

$60,000.00 in their bank account, which resulted from an award from a personal injury law suit

filed on behalf of the male Debtor.  The male Debtor submitted an affidavit that he received

$110,139.44 from the settlement of a personal injury claim.  The Trustee argues that the amounts

asserted in the male Debtor's affidavit do not match the amounts listed in the amended schedules

in the amount of $35,000.00.  Under North Carolina law, personal injury settlements may be

exempted from property of the estate. Therefore, pursuant to Section 101(32), the money in the Debtors' bank account cannot be included in a determination of solvency. At the time of filing their bankruptcy, the Debtors had $13,875.00 in non-exemptable assets[1] and $78,298.00 in liabilities.[2] The Debtors testified that their assets and liabilities were substantially the same on the date of the $35,000.00 transfer. Thus, the Trustee concludes that the Debtors' liabilities far exceeded their assets on the date of the transfer.

The Defendants argue that if the proceeds of a personal injury settlement are exemptible under federal law or North Carolina law, such proceeds should not be subject to recovery by the Trustee because the Debtors should be allowed to do with it as they desire. This approach is called the "no harm, no foul" approach by most courts. The Fourth Circuit in Tavenner v. Smoot has specifically ruled on that matter, holding that the "no harm, no foul" approach will not apply in the Fourth Circuit and stating that "we conclude the transfers of potentially exempt property are amenable to avoidance and recovery actions by the bankruptcy trustee." Tavnner v. Smoot, 257 F.3d 401, 407 (4th Cir. 2001). The Fourth Circuit declined to adopt the "no harm, no foul" approach because property is not exempt from the estate until the debtor declares it as such, Tavnner, 257 F.3d at 406, so creditors may be harmed if the trustee is not allowed to pursue these such transfers just because the property might not be exempted. Id. Thus, the Defendants' "no harm, no foul" approach was rejected by the Fourth Circuit, and this Court is required to do the

---

[1]The Trustee argues that the Defendants cannot include the funds from the personal injury settlement in a computation of the Debtors' assets because such funds are potentially exempt property. 11 U.S.C. § 101(32). Even if the $60,000.00 bank account is added to the Debtors' other assets, the total is only $73,875.00, and the Debtors are still insolvent.

[2]The Trustee contends that the Debtor's liabilities should also include the $35,000.00 antecedent debt that they owed to the Defendants.

same.

The Defendants' defense to the preference action, that the Debtors were solvent at the time of the transfer, is insufficient. The Defendants have not put forth a meritorious defense to the preference action.

The same analysis applies to the Trustee's fraudulent conveyance claims. The Defendants again assert that the Debtors were not insolvent or made insolvent as a result of the transfer. The Trustee asserts that the $35,000.00 transfer meets the requirements for a "constructive fraud" type of fraudulent transfer under Section 548(A)(1)(B). The Debtors received less than equivalent value in exchange for the transfer, and the transfer was made within one year of the Debtors' bankruptcy. The Defendants' solvency argument again must fail. The Defendants have not demonstrated a meritorious defense to the fraudulent conveyance claims under Section 548(a)(1)(B).

The Court finds that the Defendants failed to demonstrate a meritorious defense to the Trustee's claims and that this factor weighs against setting aside the Entry of Default and the Default Judgment. The Court need not address whether the Trustee will be prejudiced if the Default Judgment is vacated.

After consideration of the circumstances of the case and the positions of the parties, the Court finds no good cause to set aside the Entry of Default and the Default Judgment. Accordingly, it is ORDERED that the Motion is DENIED.

PARTIES TO BE SERVED

Michael D. West

Gerald S. Schafer
220 Commerce Place
Greensboro, NC 27401

MaryLyn Graham
Walter Graham
2100 Chelsea Acres Court
Jamestown, NC 27282

J. Marshall Shelton
P.O. Box 3324
Greensboro, NC 27402